IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE E. BLAIR-BEY, | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 3:CV-04-0590 |
| v. | : | |
| | : | (Chief Judge Vanaskie) |
| JOHN ASHCROFT, et al. | : | |
| | : | |
| Defendants | : | |

M E M O R A N D U M

I.        Introduction.

On March 19, 2004, Clarence E. Blair-Bey ("Blair-Bey"), an inmate formerly

housed at the Allenwood United States Penitentiary, White Deer, Pennsylvania, filed this action

pursuant to 28 U.S.C. § 1331, asserting Freedom of Information Act, Privacy Act and other

claims surrounding the United States Parole Commission's decision to deny him parole and set

his rehearing date in September 2007.  Plaintiff proceeds pro se and in forma pauperis.

Plaintiff essentially asserts the following claims in his Complaint: (1) violation of

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a with

respect to records produced and not produced by the Parole Commision; (2) violations of

applicable law governing the parole decisionmaking process; and (3) an ex post facto violation

because the Parole Commission deferred parole beyond the time he would have had to serve

under parole guidelines and beyond the scheduled date for the expiration of the Commission.

(Dkt. Entry 1.)  Blair-Bey seeks injunctive and monetary relief for the alleged FOIA and Privacy

Act violations  He also requests injunctive relief in the form of a new parole hearing as a remedy

for the alleged violations of parole decisionmaking regulations and procedures.  (Id.)

Named as Defendants are the U.S. Department of Justice; the Parole

Commission; former Attorney General John Ashcroft; Commission Chairman Edward F. Reilly,

Jr.; and Commission employees Stephen J. Husk, Shelley Witenstein, Margaux G. Jablonski,

Deborah H. Dudley, Pamela A. Posch, and Rockne J. Chicknell.  He also purports to sue "John

and Jane Doe, employees of the U.S. Parole Commission . . . ."  (Complaint, Dkt. Entry 1, at 2.)

On November 1, 2004, a Motion to Dismiss, or in the alternative, for Summary

Judgment, was filed on behalf of all Defendants with the exception of Jablonski, Dudley and

John and Jane Doe, who have not been served with process.  (Dkt. Entry 32.)  In conjunction

with their motion Defendants filed a statement of fact, supporting brief and exhibits.  (Dkt.

Entries 35 and 36.)  Defendants contend Blair-Bey's FOIA claim should be dismissed as moot

as he received a list of the Commission's members and hearing examiners in September of

2004.  Likewise, they assert Plaintiff fails to state a claim under the Privacy Act and is not

entitled to monetary damages.  Defendants argue that the remainder of Blair-Bey's action

sounds in habeas, precluding the relief requested.  Alternatively, they argue that Plaintiff's

claims lack substantial merit.

-2-

Plaintiff did not proffer a formal brief in opposition to Defendants' motion, or file a response to Defendants' Statement of Facts.  However, on November 19, 2005, Plaintiff did file a Motion for Partial Summary Judgment (Dkt. Entry 39), in which he cites to Defendants' filings and arguments.[1]  On December 16, 2004, Blair-Bey filed a 22-page brief, responding to Defendants' arguments and asserting that he is entitled to judgment in his favor on the liability of Defendants.  (Dkt. Entry 45.)

Having carefully considered the parties' submissions, I find that Blair-Bey's FOIA claim is moot, his Privacy Act claim is meritless, and his challenges to the parole decisionmaking process and decision to set his parole hearing date in September of 2007 also lack merit.  Accordingly, Defendants' Summary Judgment Motion will be granted.

II.        Background.[2]

Blair-Bey has been litigating adverse parole determinations in the federal court system for over a decade.  This present action concerns the latest adverse decision, reached in

---

[1]  I will construe Plaintiff's submission as his opposition to Defendants' motion for summary judgment.  In doing so I note that Plaintiff's proposed Order filed in connection with his motion for partial summary judgment seeks denial of Defendants' Motion for Summary Judgment, and does not request other relief.  See Dkt. Entry 39.

[2]  The averments in Defendants' Statement of Facts (Dkt. Entry 36-1) are deemed admitted as a result of Blair-Bey's failure to file a response as required by Local M.D. Pa. LR 56.1, which provides: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

May of 2003.  The pertinent background leading up to the latest denial of parole was set out in Blair-Bey v. Mendez, Civ. A. No. 3:CV-02-0052, slip op. at 2-9 (M.D. Pa. April 7, 2003), cert. of appealability denied, No. 03-2414 (3d Cir. March 4, 2004), and, without references to the record of the earlier case, is restated here:

Blair-Bey had a very troubled youth.  See Blair-Bey v. Quick, 151 F.3d 1036, 1037-38 (D.C. Cir. 1998)("Blair-Bey I".)  By the age of 15, he had committed a number of serious crimes, including rape, receiving stolen property, and destruction of property.  In 1975, at the age of sixteen, while on escape from a juvenile detention facility where he had been incarcerated for rape, Blair-Bey committed a murder.  On February 13, 1976, Blair-Bey was sentenced by the District of Columbia Superior Court to ten years to life for murder in the second degree.  Blair-Bey is currently serving this sentence.

In 1980, at the age of 21, while incarcerated on his first murder conviction, Blair-Bey killed another inmate by stabbing him in the back with a knife after the victim confronted him the day earlier requesting the return of a sweater, allegedly stolen from the decedent by Blair-Bey.  After pleading guilty to second degree murder in the United States District Court for the Eastern District of Virginia, Blair-Bey was sentenced to a consecutive term of ten years to life.  He was then transferred to a federal facility to begin serving his federal sentence.

The United States Parole Commission ("Commission") held Petitioner's initial parole hearing in 1991.  Because Blair-Bey was serving a combined D.C. and federal sentence,

or a "mixed sentence," pursuant to 28 C.F.R. § 2.65, the Commission first determined an amount of time to be served on the federal sentence, and then specified a date on which the D.C. parole guidelines would be applied.  The Commission decided that the District of Columbia guidelines would be applicable as of  October 15, 1991, after Blair-Bey had served 200 months for his federal offense.

Upon completion of his federal sentence, Blair-Bey was transferred to a D.C. prison.  In October 1993, a Commission Examiner, "apparently in error," conducted a parole hearing, denied parole and set a rehearing date in 24 months, or in September of 1995.  Blair-Bey I, 151 F.3d at 1038.  Before the Commission formally adopted these recommendations, the Commission and the D.C. Board of Parole ("Board") determined that the Board, and not the Commission, had jurisdiction over Blair-Bey.  Id.  The Board then conducted a de novo initial parole hearing, applying regulations that were promulgated in 1987.  Finding Blair-Bey ineligible for parole under the 1987 regulations, the Board denied parole and set a rehearing date of October 29, 1998, five years from the initial Board parole hearing.  Id.  The Board, unlike the Commission, considered Petitioner's "numerous juvenile offenses in making its calculations." Id.  The Board also considered his "extremely serious negative institutional behavior" and noted that, for the same reasons, the five-year set-off[3] was outside of the usual twelve month set-off.

---

[3] In the parlance of the D.C. Guidelines, a set-off postpones parole eligibility for consideration at a later hearing.

Id.

Blair-Bey then filed "a habeas corpus petition in the D.C. Superior Court claiming the [Board] acted illegally in denying him parole and establishing the five-year set-off." Id. The D.C. Superior Court dismissed the petition sua sponte, and the D.C. Court of Appeals summarily affirmed.

Blair-Bey then filed a § 2241 petition in federal district court, claiming that the denial of parole lacked a rational basis and that application of the 1987 regulations violated the ex post facto clause of the United States Constitution, Art. I, § 10.  The petition was again summarily dismissed based on lack of both jurisdiction and substantive merit.  Blair-Bey I, 151 at 1038.  Blair-Bey appealed the dismissal.  The Circuit Court of Appeals, after dispensing with the jurisdictional bar, addressed the merits of the two claims raised by Blair-Bey.  The appeals court held that the D.C. parole guidelines "did not create a liberty interest, because they do not limit which factors the [Board] can consider, or how to weigh them." Id. at 1047-48.  Thus, the Board's identification of "some" basis for deviating from the normal twelve month set-off period, and assigning a five year set-off for Blair-Bey, did not violate due process.  As to the ex post facto claim, the court ruled that Blair-Bey should be afforded the opportunity to establish a factual foundation for his assertion that the 1987 regulations served to increase the punishment for his 1976 murder.  Id. at 1049-50. The appellate court, on October 16, 1998, declined to reconsider its direction to remand the matter for consideration of the ex post facto issue.  159

F.3d 591 (D.C. Cir. 1998).

In August of 1998, while the petition for rehearing was still pending with the Court of Appeals, Blair-Bey received a parole review hearing.  Although it was the Board that had made the decision at issue in the Court of Appeals' ruling, it was the Commission that conducted the review hearing.[4]  Using the D.C. 1987 parole guidelines, Commission Hearing Examiner Charles Lyons gave Petitioner a "point assigned grid score," or "PAGS," of 2, but adjusted this number by one after considering Blair-Bey's "positive program adjustment and participation," giving him an adjusted PAGS of 1, "which indicates parole could be granted."  But the Hearing Examiner did not recommend parole, finding Blair-Bey "is a more serious risk than the Grid score would indicate [in] that while he was in service of a murder offense he committed another murder while incarcerated."  A rehearing was scheduled for August of 2000.

In February 2000, on remand from the Court of Appeals in Blair-Bey I, the parties reached a court endorsed stipulated disposition of his 1996 habeas petition.  Specifically, the parties agreed that, in return for Blair-Bey's voluntary withdrawal of his 1996 habeas petition, the Commission would "conduct petitioner's future parole hearings and/or rehearings according

---

[4] On August 5, 1998, the Commission assumed the responsibility of making parole-release decisions for all eligible District of Columbia Code felons, pursuant to section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, and D.C. Code Ann. § 24-209.  Effective August 5, 2000, pursuant to section 11231(a)(2) of the Act, the Commission assumed the remaining powers, duties and jurisdiction of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole.  See D.C. Code Ann. § 24-131(a)(2)(formerly section 24-1231(a)(2)).

to standards for adult prisoners set forth in 9 D.C.R.R. Chapter II, Part I, § 100 et seq. (1982)."

In February 2001, Blair-Bey received another parole eligibility hearing. The Commissioner Examiner was again Charles Lyons. Unfortunately, Examiner Lyons applied the 1987 regulations, contrary to the terms of the parties' stipulation. It bears noting, however, that application of the scoring system in the 1987 regulations indicated that Blair-Bey was eligible for parole. Nonetheless, Examiner Lyons recommended denying parole, observing:

> [T]he current psychological evaluation states that the subject is insecure with aggressive tendencies and also it is noted that the subject shows no remorse for the lives that he has taken and was more concerned with the time that he was serving for his sentences. The subject is a more serious risk based on two successive murders, one in the community and one while confined.

The Examiner recommended a twenty-four month set-off.

The Examiner's error in applying the 1987 regulations was brought to the Commission's attention via correspondence from Blair-Bey's counsel. As a result, the Commission re-opened Blair-Bey's case, scheduling a de novo hearing under the 1982 rules.

In June 2001, Commission Examiner Otis Thomas conducted a de novo parole rehearing. Examiner Thomas did not assign Blair-Bey a PAGS, nor did he consider previous scores. Like Examiner Lyons, however, Examiner Thomas recommended denial of parole and a set-off until August of 2002, or for a period of 24 months since Examiner Lyons' review. In support of this determination, Examiner Thomas cited Blair-Bey's record of explosive behavior

-8-

and the recently-conducted psychological evaluation that found Blair-Bey emotionally insecure with "aggressive tendencies."  Thomas found that Blair-Bey did not meet the applicable criteria that "there must be a reasonable probability that the subject will live, and remain at liberty without violating the law, and that the subject's release is not incompatible with the welfare of society."  The Examiner reasoned, in part, that because "the subject has been diagnosed as insecure with aggressive tendencies, which suggest that the subject lack[s] the emotional control necessary for making a satisfactory adjustment in the community," he was a risk to the community if released.

The Commission concurred with Examiner Thomas' recommendation, reasoning:

> Your release from custody in the near future will present a risk to the public safety.  This assessment is based on the fact that you have both a violent criminal history and you were involved in two separate murders leading to your instant time of incarceration. While on escape from a youth commitment for rape, you were involved in a fight with another individual and you obtained a gun, loaded it and shot the victim in the chest.  While serving the 10 year to life sentence imposed on this sentence, you stabbed another inmate to death after an earlier confrontation about personal property.  Your inability to react to any type of negative situations without resorting to violence creates a risk to the community.  It is recommended that you participate in psychological counseling on a continuous basis in order for you to learn to respond to any type of incident without resorting to violence.

The Commission then gave Blair-Bey an August, 2002 rehearing date.

This brings us to the present lawsuit.  Blair-Bey was most recently considered for

parole on September 11, 2002.  (Dkt. Entry 36-1, Def's Statement of Facts ("SF") at ¶ 12.)

Consistent with the stipulation that Blair-Bey be considered for parole on the basis of the law as

it existed before 1987, the Hearing Examiner observed that "[t]here are no guidelines to be

assessed in this case." ( Def's Ex. 10, Dkt. Entry 36-2.)  After setting forth pertinent

observations and expressing the belief that Blair-Bey should be released to the community, the

Hearing Examiner recommended that a final "decision be deferred pending completion of a

psychological evaluation." (Id.)  The Commission concurred in this recommendation.  (SF at ¶

14.)

The psychological report received on April 21, 2003 opined that Blair-Bey did not

exhibit symptoms of major illness.  (Id. at ¶ 15.)  Hearing Examiner Thomas determined that

Blair-Bey be paroled.  (Def's Ex. 13, Dkt. Entry 36-2.)  The Commission Order bearing

Thomas's decision indicates that two other members of the Commission staff initially concurred

by signing their names below his on the Commission Order.  Their signatures, however, have

been obliterated on the Order. (Def's Ex. 13.)  Below their whited-out signatures appears the

following:

> Deny parole.  Continue for rehearing in September 2007 after the
> service of 60 months from your hearing date of 9/11/02.

(Id.)  Under this notation appear the signatures of Commission Chairman Edward F. Reilly, Jr.;

Regional Commissioner John R. Simpson; Case Operations Administrator Stephen Husk; and

Commission Administrator Shelley L. Witenstein.  Their signatures are dated May 20 and 21,

2003.[5]   By Notice of Action dated May 24, 2003, Blair-Bey was informed of the adverse decision.  (Def's Ex. 12.)  The Notice stated that "[t]he Commission believes that [Plaintiff] should continue in extensive programming including the development of significant job skills, participation in substance abuse programs and intensive psychological counseling to minimize the risk that you will return to the type of inexplicable violence that marred your previous experience in the community."  (Id.)

On June 4, 2003, the Commission received a letter request from Plaintiff pursuant to the "Freedom of Information Act" and "28 C.F.R. §§ 2.72(d) and 2.55" (related to prehearing disclosure), seeking copies of his "September 11, 2002, parole rehearing." (SF at ¶17; Dkt. Entry 36-2, Defendants' Exhibit ("Ex.") 14, Letter.)  Defendant Jablonski, a FOIA Technician, responded on June 17, 2003, by providing "all of the documents . . . requested which [were] in [Blair-Bey's] active file as of the date of this response." (SF at ¶ 18; Dkt. Entry 36-3, Ex. 15, Letter.)  On June 26, 2003, the Commission received an "Amended Disclosure Request" from Blair-Bey.  (Dkt. Entry 36-2, Ex. 16, Letter.)  Plaintiff requested the disclosure of the following documents from his parole file: (1) a legible copy of the Commission's May 27, 2003 Order, "with two missing signatures that were whited out"; and (2) a listing of the names of all Examiners and Commissioners.  (Id.)

_____

[5]  The Order is stamped with the date of May 27, 2003, and will be referred to as the "May 27, 2003 Order."

Defendant Jablonski responded on June 30, 2003, stating that Plaintiff was "provided with an exact copy of the [May 27, 2003, Order] as reflected in his file." With respect to the request for the names of Commissioners and Examiners, Jablonski stated that "we have no document that meets the terms of your request." (Id. at ¶ 21; Dkt. Entry 36-2, Ex. 17.)

On July 22, 2003, Plaintiff sent a letter to Commission Chairman Reilly, which Plaintiff labeled as a "FOIA Appeal." (Dkt. Entry 36-2, Ex. 18, Letter.) The letter challenged the authenticity of the May 27, 2003 Order produced by the Commission; claimed the Commission violated agency protocol in its voting process; violated 28 C.F.R. § 2.74(a), which sets a 21-day period to issue a parole decision; and alleged that the "whiting out" of the May 27, 2003 Order violated the Privacy Act. (Id.) Blair-Bey requested the Commission to reopen his "case for good cause." (Id.) The letter did not address his request for the list of Commissioners and Examiners. (Id.)

On August 20, 2003, Plaintiff filed a combined "Petition for Reconsideration of September 11, 2002, Parole Rehearing" and "FOIA/Privacy Act Appeal of July 29, 2003." (Dkt. Entry 36-2, Ex. 19, Letter.) The letter did not address the Commission's assertion that no document existed that was responsive to Plaintiff's request for a list of the Commissioners and Examiners. (Id. at ¶ 26.) Plaintiff argued the Commission should vacate the results of the parole hearing and grant him de novo parole review. (Dkt. Entry 36-2, Ex. 19.)

On December 1, 2003, Defendant Dudley, a case analyst, denied Blair-Bey's

-12-

request to reopen and reconsider his parole status.  (Dkt. Entry 36-1, SF ¶ 27; Dkt. Entry 36-2,

Ex. 20, Letter.)  In support of this determination, she wrote:

> A careful review of your file indicates that the Commission
> appropriately disagreed with the hearing examiners
> recommendation.  Though you indicate your recent institutional
> behavior has been violation free, your history which includes raping
> a minor, an escape and murder in the community, followed by an
> institutional murder, suggests that more time is needed to minimize
> your risk to society.  This risk is clearly and accurately described in
> the Reasons section of your most recent Notice of Action.
>
> Finally, your programming accomplishments were considered at
> the time of your hearing and at the time the Commission's decision
> was made.  The accomplishments were determined to be ordinary,
> and not beyond what would be expected for an inmate to achieve.

On December 17, 2003, Plaintiff filed a "FOIA Appeal" with Defendant Posch.

(Dkt. Entry 36-3, Ex. 21, Letter.)  Again Plaintiff asserted that the Commission "violated its

voting process in denying [him] parole . . . and acted intentionally or willfully in failing to maintain

accurate records of [his] parole rehearing file."  (Id.)   He also claimed that 5 U.S.C. §

552a(d)(2) had been violated because the Commission had not taken action to "amend" the

May 27, 2003 Order to indicate whose names had been "whited out."  Defendants Chicknell and

Posch responded on February 4, 2004  by advising Blair-Bey that the Commission is exempt

from the record amendment provisions of the Privacy Act.  (Ex. 22, Letter.)

This action was brought on March 19, 2004.  On September 28, 2004, the

Commission provided Blair-Bey with a copy of a list of the names of Commissioners and

-13-

Hearing Examiners.  (Dkt. Entry 36-1, SF at ¶ 31; Dkt. Entry 36-2, Ex. 23.)

III.          Discussion.

          The essential facts have been presented on the documents accompanying

Defendants' motion and Plaintiff's responses to that motion.  As disclosed by those documents,

there is no dispute that (a) Hearing Examiner Thomas determined that Plaintiff should be

paroled; (b) the May 27, 2003 Order was altered by whiting out signatures that appeared below

Thomas's signature; (c) the Commission determined not to parole Plaintiff; (d) Plaintiff was

apprised of this decision by Notice of Action dated May 24, 2003; (e) the Commission has not

identified the persons who may have initially concurred with Examiner Thomas; (f) the

Commission denied Plaintiff's request for reconsideration of the adverse parole ruling; (g)

Plaintiff will not be considered for parole until September of 2007; and (h) the Commission gave

Plaintiff a list of the names of its Commissioners and Examiners after this lawsuit was brought.

The dispositive question is whether, on the basis of these undisputed facts, Defendants are

entitled to judgment in their favor on Plaintiff's claims.

          A.     Plaintiff's FOIA Claim is Moot.

          The Freedom of Information Act ("FOIA") requires that federal agencies disclose,

upon request, broad classes of agency records to the public absent exemption under the Act.

See 5 U.S.C. § 552(a), (b).  An agency, under normal circumstances, has 20 days to advise the

requester of its determination as to whether to comply with the request and of their right to

-14-

appeal to the head of the agency.  Monetary damages are not available under FOIA.  <u>See</u>

<u>Eltayib v. U.S. Coast Guard</u>, 53 Fed. Appx. 127 (D.C. Cir. 2002)(FOIA does not provide for the

award of damages); <u>Thompson v. Walbran</u>, 990 F.2d 403, 405 (8th Cir.1993)(same).  Court

ordered remedies are limited to directing the production of agency records and assessing

reasonable attorney fees and litigation costs against the United States. <u>Pro</u> <u>se</u> litigants,

however, are not entitled to attorneys fees under FOIA.  <u>See</u> <u>Cunningham v. FBI</u>, 664 F.2d 383,

387 (3rd Cir.1981) ("non-lawyer <u>pro</u> <u>se</u> litigants may not be awarded attorney fees under the

Freedom of Information Act.")

        Blair-Bey's FOIA claim is premised on the failure to disclose a list of the names of

Parole Commissioners and Hearing Examiners. (Dkt. Entry 1.)   Defendants contend this claim

is now moot as Plaintiff was provided the requested document in conjunction with Defendant

Reilly's September 28, 2004, reconsideration of Plaintiff's "FOIA Appeal".  <u>See</u> Dkt. Entry 36-3,

Ex. 23.  I agree.  <u>See</u> <u>Walsh v. U.S. Dept. of Veteran Affairs</u>, 400 F.3d 535, 536-37 (7th  Cir.

2005)("once the government produces all the documents a plaintiff requests, her claim for relief

under the FOIA becomes moot").

        To the extent Plaintiff contends his FOIA claim is not moot because the

Commission failed to provide the requested list within the time limits established by the FOIA,

he is still not entitled to any relief.  An untimely response to a FOIA request is not grounds for

relief when Defendants have produced, albeit belatedly, all responsive documents.  <u>See</u>

<u>Brannum v. Dominguez</u>, 377 F. Supp. 2d 75, 81 (D. D.C. 2005)(the lack of timeliness of a FOIA disclosure or response does not preclude summary judgment for an agency in a FOIA case). Thus, Blair-Bey's FOIA claim will be dismissed as moot.

### B.    Plaintiff Is Not Entitled to Recover Under the Privacy Act.

The Privacy Act, 5 U.S.C. § 552a, requires governmental agencies to maintain accurate records and provides individuals with certain safeguards, including the right to require correction of inaccurate records.  The Act authorizes civil actions to enforce the amendment and accuracy requirements, and provides for monetary damages, costs and attorney's fees where the inaccurate record has resulted in an adverse determination and the agency is shown to have acted intentionally and willfully.  <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576, 581 (D.C. Cir. 2002).

Plaintiff's Privacy Act claim appears to be twofold: (1) the Commission wrongly refused to "amend" the May 27, 2003 Order by indicating the identity of the Commission staff who concurred, at least initially, in Hearing Examiner Thomas's recommendation that Blair-Bey be paroled; and (2) his recent denial of parole was based on information and proceedings that were "not sufficiently accurate to assure fairness to him in the Commission's parole determination." (Plf's Brief in Supp. of Motion for Partial S.J., Dkt. Entry 45, at 7.)   Neither aspect of the Privacy Act claim is meritorious.

As a general rule, a person has a right to request correction of inaccurate agency

-16-

records.  See 5 U.S.C. § 552a(d)(2). The legislation, however, allows for the exemption of law enforcement records from the amendment requirement, and the Commission has exempted itself from the record-amendment requirements of the Privacy Act.  See Fendler v. U.S. Parole Commission, 774 F.2d 975, 979 (9th Cir. 1985); Buxton v. U.S. Parole Commission, 844 F. Supp. 642, 644 (D. Ore. 1994); 28 C.F.R. § 16.85(a)(2).  Accordingly, the Commission's refusal of Blair-Bey's amendment request affords no basis for relief.

While the Commission is exempt from the record-amendment requirements of the Act, it is not exempt from the accuracy requirements set forth in § 552a(e)(5).  See Deters v. United States Parole Commission, 85 F.3d 655, 658 n.2 (D.C. Cir.1996).  In order to state a claim for monetary damages under the Privacy Act, "a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and, consequently, that an 'adverse' 'determination [wa]s made' respecting the plaintiff." Toolasprashad, 286 F.3d at 583; Cordero v. Bureau of Prisons, No. Civ.A. 4:99-2165, 2005 WL 1205808 at *3 (M.D. Pa. 2005). Defendants claim that the May 27, 2003 Order provided to Blair-Bey from his file was an "exact" copy of the one maintained in his file.  Defendants suggest the use of "white-out" simply reflects voters "who changed their minds and changed their votes."  (Dkt. Entry 35-1,Defs Br in Supp. of Mot. for S.J., at 13 n.5; see also Dkt. Entry 36-3, Ex. 17.)  Blair-Bey contends the alteration of the document suggests a conspiracy to deny him parole, thus undermining the parole process to the point that it cannot be relied upon.

The shortcoming of Blair-Bey's argument is that he cannot show that the May 27, 2003 Order is inaccurate or that the alleged alteration <u>caused</u> the adverse parole decision. Stated otherwise, it was not inaccurate record keeping that caused the adverse parole determination.  According to Plaintiff, it was the alleged failure of the Commission to follow its own procedures and other voting discrepancies. Thus, Blair-Bey has failed to present a viable Privacy Act claim.

> C.   **Blair-Bey's Challenges to the Commissioner's Decisionmaking Process and the Denial of Parole.**

Liberally construing the remainder of Plaintiff's Complaint, he alleges: (1) the Commission violated its own voting procedures when it denied him parole; (2) the Commission failed to issue a timely decision on his September 2002 parole review; (3) the Commission failed to advise him of his parole guideline range; and (4) the Commission's 60 month set off is in violation of the <u>ex</u> <u>post</u> <u>facto</u> clause and the Parole Commission sunset provisions of the Sentencing Reform Act.  Plaintiff states that, should he succeed on his claim, he would simply receive a new hearing.

Defendants assert that Blair-Bey's request for equitable relief in the form of a new parole hearing can only be awarded in a properly filed habeas action.  Defendants thus argue that the claims concerning parole procedures should not be addressed.

In <u>Wilkinson v. Dotson</u>, 125 S. Ct. 1242 (2005), the Court recently ruled that actions concerning the validity of procedures used to determine parole eligibility and parole

suitability need not be brought under the habeas corpus statute.  Because success on a claim

challenging the validity of parole procedures "does not mean immediate release from

confinement or a shorter stay in prison," id. at 1248, it does not implicate "'the core of habeas

corpus.'" Id.  It thus appears that, to the extent that Blair-Bey only challenges the procedures

followed in this case and does not present a claim or request equitable relief that would

necessarily shorten the duration of his confinement, his claims are properly presented in this

action.

Defendants, addressing the substance of Plaintiff's claims, argue that Blair-Bey is

not entitled to relief in any event.  I agree.

First, the records do not disclose a violation of regulations governing parole

decisionmaking.  First, contrary to Plaintiff's assertion, there is no need for three hearing

examiners to be present at a parole hearing.  See 28 C.F.R. § 2.23(a) ("Any hearing may be

conducted by a single examiner or by a panel of examiners.")  Nor does Plaintiff have a due

process right to a hearing conducted by a panel of three examiners.  See Newbury v. Prisoner

Review Bd. of State of Illinois, 791 F.2d 81, 87 (7th Cir. 1986).  Two hearing examiners must

concur to make a favorable parole recommendation to a Regional Commissioner.  See 28

C.F.R. § 2.23(b).[6]  In this case, two hearing examiners did not agree on a parole

---

[6] This provision is applicable to District of Columbia Code offenders such as Plaintiff.
See C.F.R. § 2.89.

recommendation.  Defendant Husk explicitly disagreed.  (See Def's Ex. 10 at 3.)  Furthermore, the record discloses that the requirement that any final parole decision include the concurrence of two Commissioner votes, 28 C.F.R. § 2.74(c) was met here.  Chairman Reilly and Commissioner Simpson declined to approve parole.  Thus, Blair-Bey is not entitled to a new parole hearing on the ground that Commission decisionmaking regulations were not followed.

Nor is Blair-Bey entitled to relief because the decision was made more than 21 days after his parole hearing.  The pertinent regulation provides that a "decision shall ordinarily be issued within 21 days of the hearing, excluding weekends and holidays."  28 C.F.R. § 2.74(a) (emphasis added).  In this case, a decision was deferred in order to obtain a comprehensive psychological evaluation, which was not received by the Commission until April 21, 2003.  Excluding weekends and holidays, the Commission Notice of Action, dated May 24, 2003, was issued on the 23rd day.  No prejudice due to delay has been articulated by Blair-Bey. Under these circumstances, he is not entitled to relief.  See Judd v. Baer, 911 F.2d 571, 573-74 (11th Cir. 1990).

Blair-Bey also appears to contend that the Commission erred in failing to apply District of Columbia parole guidelines to his case.  As Defendants point out, parole guidelines did not come into effect in the District of Columbia until after Blair-Bey engaged in the criminal conduct that presently accounts for his incarceration.  Blair-Bey entered into a stipulation requiring the Commission to apply pre-guideline rules in the consideration of his case.  Blair-

Bey cannot now contend that the Commission has erred in not applying the guideline system in his circumstance.

Finally, Plaintiff, relying upon <u>Lyons v. Mendez</u>, 303 F.3d 285 (3d Cir. 2002), appears to argue that a failure to set a release date within a parole guideline range would contravene the <u>ex post facto</u> clause. (Br. in Supp. of Mot. for Partial S.J. at 18-20.)  <u>Lyons</u> involved a very narrow class of inmates, <u>i.e.</u>, those who committed crimes between October 12, 1984, when the Sentencing Reform Act was signed into law, and December 7, 1987, when Congress amended the statute to make clear that the Parole Commission retained the authority to extend incarceration beyond the maximum date of a guideline range of imprisonment.  <u>Id</u>. at 292.[7]  Blair-Bey committed his crimes well before 1984, and is thus not within the limited class

---

[7] Section 235(b)(3) of the Sentencing Reform Act of 1984, as originally enacted, provided:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this act, that is within the range that applies to the prisoner under the applicable parole guideline.  A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

Pub. L. 98-473, 98 Stat. 2032 (1984).  On December 7, 1987, Congress amended § 235(b)(3) to allow the Commission to depart above the maximum term of a guideline range for "good cause."  See <u>Lyons</u>, 303 F.3d at 288 n.5.

at issue in <u>Lyons</u>.[8]

Although the Commission elected to set Plaintiff's next hearing after the date by which the Commission was to be dissolved, it is the Court's understanding that legislation extending the Commission's existence beyond November 1, 2005 is presently awaiting the President's signature.  Under these circumstances, to the extent that he is complaining that a release date for him has not yet been set, Blair-Bey is not entitled to relief.  <u>See</u> <u>Stange v. United States Parole Commission</u>, 875 F.2d 760, 762 (9th Cir. 1989).

IV.        **Conclusion.**

For the reasons set forth above, Defendants' summary judgment motion will be granted, and this action will be dismissed.  An appropriate Order follows.[9]


                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie, Chief Judge
                              Middle District of Pennsylvania


---

[8]  It should also be noted that a claim based upon <u>Lyons</u> relates directly to the duration of confinement, and could not be brought except by way of a habeas corpus petition.

[9]  In light of the decision to grant Defendants' summary judgment motion, Plaintiff's motions for appointment of counsel and to compel discovery, as well as Defendants' motion for a protective order, are moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARENCE E. BLAIR-BEY,        :
        :
     Plaintiff      :
        :  CIVIL ACTION NO. 3:CV-04-0590
   v.      :
        :  (Chief Judge Vanaskie)
JOHN ASHCROFT, et al.     :
        :
     Defendants   :

O R D E R

September 27, 2005

For the reasons set forth in the foregoing Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.    Plaintiff's Motion for Partial Summary Judgment (Dkt. Entry 39) and supporting materials shall be construed as his opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

2.    Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. Entry 32), is **GRANTED**.

3.    The following motions are denied as moot:

    a.  Plaintiff's Motion to Appoint Counsel (Dkt. Entry18);
    b.  Plaintiff's Motion in Limine (Dkt. Entry 27);

     c.  Plaintiff's Motion to Compel Discovery (Dkt. Entry 48);
     d.  Defendants' Motion for a Protective Order (Dkt. Entry 51); and
     e.  Plaintiff's Motion for an Extension of Time to File a Brief in Opposition to Defendants' Motion for a Protective Order.  (Dkt. Entry 55).

4.      The Clerk of Court is directed to close the case.

<u>s/ Thomas I. Vanaskie</u>
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania